LONDON MILLS, *etc.*, WHO SUES BY OLLIE MILLS,
HIS COMMITTEE,

v.

JOE N. DEWEES, *et al.*

(No. 10769)

Submitted April 24, 1956.     Decided June 12, 1956.

*D. Grove Moler,* for plaintiffs in error.

*Kingdon & Kingdon, Arthur Ritz Kingdon,* for defendants in error.

RILEY, JUDGE:

London Mills, an insane person, who sues by his Committee, instituted this action of trespass on the case against the defendants, Joe N. DeWees and Glen M. De-Wees, to recover the sum of two thousand dollars, which the plaintiff claims as damages for the destruction of his 1952 Model Willys automobile, alleged to have resulted from a collision on June 6, 1953, on State Route No. 10 in Wyoming County, West Virginia, from the alleged negligent operation by the defendant, Glen M. DeWees, of an automobile owned by the operator's father, Joe N. De-Wees. This writ of error is prosecuted to a judgment in favor of the plaintiff and against the defendants in the amount of $1,694.40, based upon a directed verdict in favor of plaintiff.

To the declaration the defendants filed a joint and several plea of not guilty, and a joint and several plea of *res judicata,* the latter of which is to the effect that the recovery in this action for damages for the destruc-

tion of plaintiff's automobile is barred because of a recovery of damages by the same plaintiff against the same defendants, obtained in a former action for the recovery of damages for alleged personal injuries, instituted in the Circuit Court of Wyoming County at December, 1953, rules, allegedly grounded upon the same act of negligence on the part of the defendants, upon which the instant action is based, in which prior action the plaintiff is alleged in the special plea to have recovered a judgment in the amount of eight thousand dollars, which judgment was paid and satisfied.

The trial court sustained plaintiff's demurrer to defendants' special plea, to which ruling the defendants excepted.

At the instant trial upon the issue of the plea of not guilty, the trial court overruled defendants' motion that plaintiff be not permitted to introduce any evidence in support of the allegations of plaintiff's declaration on the basis of plaintiff's recovery for personal injuries in the prior action, and rejected defendants' tender of the pertinent parts of the record in the former action, in which action no claim was asserted for property damages; and, over defendants' objection, gave plaintiff's instruction No. A, by which the jury was directed to return a verdict for the plaintiff, which instruction submitted to the jury the assessment of damages for the destruction of plaintiff's automobile; and the trial court having overruled defendant's several motions: (1) for judgment *non obstante veredicto,* and (2) for a new trial for the defendants, the court entered judgment in favor of the plaintiff upon the verdict of the jury.

This record discloses that on June 6, 1953, the plaintiff, London Mills, an insane person, who was then sane, was driving his 1952 Model Willys automobile with an overdrive on State Route No. 10 in Wyoming County, West Virginia, when it was collided with by the automobile owned by Joe N. DeWees, and operated at the time by his son, Glen M. DeWees. Mills suffered per-

sonal injuries, and subsequently mental disturbances, and his wife, Ollie Mills, was appointed his Committee.

According to the factual issue, which would have been raised by the plea *res judicata,* had not plaintiff's demurrer to the plea been sustained and defendants' tender of evidence at the trial been refused, over defendants' objection, the plaintiff, London Mills, an insane person, who sues by Ollie Mills, his Committee, instituted in December, 1953, an action of trespass on the case in the Circuit Court of Wyoming County against the defendants, Joe N. DeWees and Glen M. DeWees, the declaration in which action sets forth the collision upon which the instant action is based, and sets up a claim for fifty thousand dollars for personal injuries, medical expenses, and loss of wages.

The declaration in the former action made no reference or claim for property damages whatever, and no other or separate action had been previously instituted for such alleged property damages, nor was any other action involving any property damages, growing out of the collision, then pending in the Circuit Court of Wyoming County, or elsewhere. In the former action the defendants filed a plea of the general issue. Upon the trial the jury returned a verdict in favor of the plaintiff and against the defendants in the amount of eight thousand dollars, upon which the trial court entered judgment, and, the judgment having been paid and satisfied, the case was retired from the docket of the Circuit Court of Wyoming County.

At the beginning of the instant trial, the defendants objected to the introduction of any evidence by the plaintiff, which objection was overruled; whereupon the defendants tendered in evidence the declaration and former order in the former trial, which evidence was excluded by the court.

The rulings of the trial court assigned as error are: (1) In sustaining plaintiff's demurrer to the defendants' joint and several special plea of former adjudication;

(2) in permitting the plaintiff to introduce evidence in support of the allegations of his declaration, and in rejecting defendants' tender in evidence of the declaration and judgment in the former case; (3) in giving plaintiff's peremptory instruction No. A, over defendants' objection; (4) in entering judgment upon the jury verdict in favor of the plaintiff, and in refusing to set aside the verdict for the plaintiff; and (5) in refusing to sustain defendants' motion to enter a judgment for the defendants, notwithstanding the verdict in plaintiff's favor.

These assignments of error raise the issue whether a plaintiff, who has sustained personal injuries and property damage in an automobile collision, caused by a single act of negligence, has a single cause of action, and, therefore, the elements of damages, consisting of injury to the person and property, must be joined in the same action, so that the plaintiff would be barred in a subsequent action for an element of damages not embraced in such action and joined.

Though this Court in a number of cases has come close to the holding that a single wrongful act, or negligent omission to act, causing an injury to both person and property of the same person, constitutes one cause of action with items of damages, and, therefore, the cause of action cannot be split and the recovery of a judgment on one item of damages may be pleaded in bar to recovery for the other item of damages, the exact question presented by this record has never been decided by this Court. In the syllabus of *Hannah* v. *Beasley,* 132 W. Va. 814, 53 S. E. 2d 729, this Court held: "To justify the application of the doctrine of *res judicata,* '* * * there must be a concurrence of four conditions, namely: (1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of persons, and of parties to the action; (4) identity of the quality in the persons for or against whom the claim is made.' Opinion, *Marguerite Coal Co.* v. *Meadow River Lumber Co.,* 98 W. Va. 698." In point 1 of the syllabus of *Larzo* v. *Swift & Co.,* 129 W. Va. 436, 40 S. E. 2d 811, it was held: "In an action by a married

woman for recovery of damages for injuries sustained by her, she may, in addition to compensation for physical pain, mental anguish and impairment of her capacity to enjoy life, recover for damages to her property caused by the same negligent conduct which occasioned her injury." In point 1 of the syllabus of *Thalman* v. *Schultze*, 111 W. Va. 64, 160 S. E. 303, this Court, dealing with the question of pleadings held that: "Where the damages result to a party in the same manner, and from the same negligent or wrongful act of the defendant, and are coincident in time, and the cause of action accrues to the plaintiff in the same right and against the defendant in the same character or capacity, they may be joined in the same count in the declaration." In point 1 of the syllabus of *Hudson* v. *Iguano Land & Mining Co.*, 71 W. Va. 402, 76 S. E. 797, the holding of this Court was: "When the cause of action in a second suit is the same as that in a former one and the parties are identical, both are concluded by the judgment or decree in the former suit, not only as to what was actually decided therein, but likewise as to everything the plaintiff could have adduced in support of his claim and as to everything the defendant could have relied upon in defense. The cause of action is merged in the judgment or decree." In point 1 of the syllabus in *Sayre's Admr.* v. *Harpold, et al.*, 33 W. Va. 553, 11 S.E. 16, it was held: "An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto, and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata*."

But in points 1 and 3 of the syllabus of *Lutz* v. *Williams, et al.*, 84 W. Va. 216, 99 S. E. 440, this Court held:

"1. A cause of action between persons who were parties to a former adjudication, set up in a subsequent action between them, is not *res judicata* by the former decision, unless it is identical with the one actually or constructively heard and determined in the former suit.

\* \* \*        \* \* \*

"3. A reservation in a decree in such former adjudication, saying it shall not be construed to be an adjudication as to the title to the fund in question, except that it does not belong to the principal, saves the right to proceed against the bank as depositary of the agent."

See, however, the syllabus of *Perdue, et al.* v. *Ward, et al.*, 88 W. Va. 371, 106 S. E. 874, 14 A.L.R. 539, which reads: "A final decree in an injunction suit, instituted solely for the purpose of inhibiting defendants from obstructing plaintiff's right of way over defendants' land, and which decree affords that relief only, is not an estoppel to a subsequent suit at law by the same plaintiffs against the same defendants to recover damages caused by the obstruction of plaintiffs' right of way; and especially is this true where the record of the injunction suit discloses that the question of damages for the obstruction was not even mentioned."

To be distinguished from the foregoing cases is the case of *Pridemore* v. *Lucas*, 131 W. Va. 1, 47 S. E. 2d 839. In point 1 of the syllabus of *Pridemore* v. *Lucas, supra*, it was held: "Where a material question in a pending suit has been put in issue in a former suit, and there judicially determined, such question is conclusively settled by a decree rendered therein, and cannot be reasserted in a subsequent suit between the same parties and involving the same claim, demand or cause; but where the pending suit is upon a different claim, demand or cause, the decree in the first suit operates as a bar only as to questions actually litigated and determined in the former suit."

From the foregoing quoted portions of the syllabuses

of the above-cited cases decided by this Court, it seems that some inconsistency through the course of years has crept into the decisions of this Court. For instance point 1 of the syllabus of *Sayre's Admr.* v. *Harpold, et al., supra,* holds that the "adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto, and coming within the legitimate purview of the subject-matter of the action."; yet in point 1 of the syllabus of *Lutz* v. *Williams, et al., supra,* this Court held that "A cause of action between persons who were parties to a former adjudication, set up in a subsequent action between them, is not *res judicata* by the former decision, unless it is identical with the one actually or constructively heard and determined in the former suit."

Because in the former action of *Mills* v. *DeWees,* in which a verdict for personal injuries was rendered and a judgment entered thereon, in neither the pleadings nor the proof was the question raised involving the adjudication of the claim for property damages, upon which this action is based, the apparent inconsistency in some of the West Virginia cases is not material to the adjudication of this case.

Also to be distinguished from the foregoing cases decided by this Court is the case of *Dunsmore, Executrix of the Estate of Jewette Frederick Dunsmore, deceased* v. *Hartman,* 140 W. Va. 357, 84 S. E. 2d 137, cited by counsel for the defendants, and decided by this Court on certificate of the ruling of the Circuit Court of Pendleton County in overruling the defendant's demurrer to the declaration. In that case this Court, in reversing the ruling of the trial court, held that a demurrer to a declaration, wherein damages for wrongful death under the Wrongful Death Act, Code, 55-7-5, and 55-7-6, as amended by Section 6, Article 7, Chapter 1, Acts of the Legislature, Regular Session, 1955, were demanded in one

count of the declaration, and damages to property were demanded in another count of the declaration, should be sustained, notwithstanding all of such damages were alleged in the declaration to have resulted from the same wrongful act of the defendant. The Wrongful Death Act, contained in Code, 55-7-5, and 55-7-6, as amended, provides a separate and distinct cause of action, in which the amount of recovery at the time the *Dunsmore* case was decided was limited to ten thousand dollars, and by virtue of Section 6, Article 7, Chapter 1, Acts of the Legislature, Regular Session, 1955, is limited to a recovery of twenty thousand dollars in those cases in which the plaintiff proves by a preponderance of the evidence financial or pecuniary loss sustained by a distributee or distributees of the deceased person in an amount exceeding the sum of ten thousand dollars, but not more than twenty thousand dollars; whereas in the common law actions of trespass on the case to recover property damages for injury to or destruction of property and personal injuries, there is no common law or statutory rule limiting the recovery of damages, where such damages are established for jury determination by competent proof.

Likewise the foregoing cases, as well as the instant case, may be distinguished from the recent case of *Alloy, Admrx.* v. *Hennis Freight Lines,* 139 W. Va. 480, 80 S. E. 2d 514, which simply held that under Chapter 55, Article 7 of the Code, as amended by Chapter 2, Acts of the Legislature, Regular Session, 1945, and Chapter 4, Acts of the Legislature, Regular Session, 1949, in point 1 of the syllabus: "* * * if a person dies of injuries, occasioned by the wrongful act of another, pending trial of an action to recover for such injuries, such action may be revived in the name of his personal representative, but such further proceedings shall conform to an action for wrongful death in which recovery is limited to the amount of $10,000.00."

This case has been well and exhaustively argued and briefed by both counsel for the plaintiff and defendants;

and from the full collation of authorities contained in their respective briefs it appears that the cases arising and decided in other jurisdictions fall into three general classes: (1) What is generally designated as the majority rule, which is to the effect that a single wrongful act or negligent omission causing an injury to both person and property of the same person constitutes one cause of action with separate items of damages, and, therefore, a recovery of a judgment for one or more items of damages may be pleaded in bar of an action for recovery for another item of damages, allegedly caused by the same wrongful act, which majority rule embraces no exceptions based upon: (a) subrogation under an insurance policy or other contract; (b) upon the assignment of one or more, but not all, of the items of damages embraced in the single cause of action; (c) for the reason that the cause of action for property damages is assignable, whereas a claim for personal injuries is not assignable; and (d) for the reason that there is or may be a different statute of limitations running against the assertion of a claim for property damages than that running against a claim for personal injuries.

The majority rule is succinctly and well stated in the case of *Dearden* v. *Hey,* 304 Mass. 659, 24 N.E. 2d 644, 127 A. L. R. 1077, Notes 1081 and 1082, in which the Massachusetts Supreme Judicial Court held that damages resulting from a single tort, when suffered by one person, though such damages are partly for damages or injury to property and partly for personal injuries, are the subject of only one action against the defendant tort-feasor. The rationale of the Massachusetts Supreme Judicial Court was postulated upon the two positions: (1) that damages to property and personal injuries suffered by one person as the result of a single tort are merely items of damages leading from the same wrong; and (2) that the period fixed by the statute of limitations is different in cases of personal injury than in cases involving property damages, and that a cause of action for property damages is assignable, whereas a

cause of action for personal injuries is not, are of themselves insufficient to give rise to two separate causes of action.

For excellent collations of authorities supporting the majority rule, see note to *Dearden* case, contained in 127 A. L. R. 1081 and 1082; and the annotation to *Underwood* v. *Dooley,* 197 N. C. 100, 147 S. E. 686, 64 A. L. R. 656, Notes 663 to 668, inclusive. Also see the following cases set forth in the foregoing annotations contained in the above-cited American Law Reports, which support the majority rule: *Southern R. Co.* v. *King* (1908 87 C. C. A. 284), 160 Fed. 332 (affirmed in (1910) 217 U. S. 524, 54 L. ed. 868, 30 Sup. Ct. Rep. 594), declaring Georgia Law; *Boyd* v. *Atlantic Coast Line R. Co.* (1914; D. C.) 218 Fed. 653, declaring Georgia Law; *Birmingham Southern R. Co.* v. *Lintner* (1904), 141 Ala. 420, 109 Am. St. Rep. 40, 38 So. 363, 3 Ann. Cas. 461; *Jenkins* v. *Skelton* (1920), 21 Ariz. 663, 192 Pac. 249; *Georgia R. & Power Co.* v. *Endsley* (1928), 167 Ga. 439, 62 A. L. R. 263, 145 S. E. 851 (rulings and judgment adopted and applied by court of appeals in (1929) 39 Ga. App. 152, 146 S. E. 352); *Western & A. R. Co.* v. *Atkins* (1914), 141 Ga. 743, 747, 82 S. E. 139; *Clancey* v. *McBride* (1929), 251 Ill. App. 157; *Cassidy* v. *Berkovitz* (1916), 169 Ky. 785, 185 S. W. 129; *Doran* v. *Cohen* (1888), 147 Mass. 342, 17 N. E. 647; *Bliss* v. *New York C. & H. R. R. Co.* (1894), 160 Mass. 447, 39 Am. St. Rep. 504, 36 N. E. 65; *Braithwaite* v. *Hall* (1897), 168 Mass. 38, 46 N. E. 398, 1 Am. Neg. Rep. 623; *King* v. *Chicago, M & St. P. R. Co.* (1900), 80 Minn. 83, 50 L.R.A. 161, 81 Am. St. Rep. 238, 82 N. W. 1113; *Kimball* v. *Louisville & N. R. Co.* (1909), 94 Miss. 396, 48 So. 230; *Coy* v. *St. Louis & S. F. R. Co.* (1915), 186 Mo. App. 408, 172 S. W. 446; *Anderson* v. *Jacobson* (1919), 42 N. D. 87, 172 N. W. 64; *Fields* v. *Philadelphia Rapid Transit Co.* (1922), 273 Pa. 282, 117 Atl. 59; *Frankel* v. *Quaker City Cab Co.* (1923), 82 Pa. Super. Ct. 217; *Mobile & O. R. Co.* v. *Matthews* (1906), 115 Tenn. 172, 91 S.W. 194; *Smith* v. *Lenzi* (1929), 74 Utah 362, 279 Pac. 893; *Pills-*

*bury* v. *Kesslen Shoe Co.* (1939), 136 Me. 235, 7 A. 2d 898; *Holcombe* v. *Garland & Denwiddie* (1931), 162 S. C. 379, 160 S. E. 881; *Flickner* v. *One Chevrolet Truck & Trailer* (1935), 178 S. C. 53, 182 S. E. 104; *Booth* v. *Frankenstein* (1932), 209 Wis. 362, 245 N. W. 191; *Tuttle* v. *Everhot Heater Co.* (1933), 264 Mich. 60, 249 N. W. 467.

Also supporting the majority rule, notwithstanding there was partial subrogation as to damages for injury to property, is the well-reasoned case of *Sprague* v. *Adams,* 139 Wash. 510, 247 P. 960, 47 A. L. R. 529, a case involving personal injuries sustained in an automobile collision caused by the defendant's negligence, in which the Supreme Court of Washington held that the trial court had properly rejected the plaintiff's offer of proof to show the prior suit was instituted for the benefit of an insurance company, which had become subrogated to plaintiff's claim for property damages under an insurance policy with plaintiff, and in which the Supreme Court of Washington rationalized that the inquiry before that Court was not what rights the insurance company may have acquired in the plaintiff's claim, but "whether or not respondents [that is the defendants in the trial court] shall be subjected to more than one suit for their single tort."

To the same effect see *Kidd* v. *Hillman,* 14 Cal. App. 2d 507, 58 P. 2d 662, an action brought in plaintiff's name by the assignee of her insurer, who had honored plaintiff's claim under a policy for damages to plaintiff, in which the California Court of Appeals sustained the trial court in overruling plaintiff's contention that the insurance company, having indemnified plaintiff for the damage to her car, became subrogated to plaintiff's right of action against the defendant; and that the plaintiff had executed a release in favor of the defendant and, consequently, had no right, title or interest in the damage to her automobile, and therefore her present action was barred either by the release executed by the defendant or her recovery in the trial action, stating that: "It was the

duty of the insurer to protect its right of subrogation, assuming it had such right. Not having done so, it cannot now be heard to complain * * * The action is barred both by the release and by the rule against the splitting of causes of action."

(2) An exception to the majority rule has been established in several cases involving subrogation under insurance policies.

An exception to the general rule is well exemplified by the case of *Underwood* v. *Dooley*, 197 N. C. 100, 147 S. E. 686, 64 A. L. R. 656, in which the North Carolina Supreme Court, adhering to the majority rule, and perhaps by way of dictum, said that an action for damages for injury either to the person or property caused by a single tort will be dismissed, where it appears at the date of the institution of the action that another action by the same plaintiff against the same defendant, based upon the same wrongful act has been instituted; the pendency of an action brought by the insurer of an automobile to recover damages for collision against a defendant, whose negligence is alleged to have caused such damages, is not ground for dismissing an action brought by the owner of the automobile against the same defendant for personal injuries resulting from the collision. Typical of the exception to the general rule is the case of *Underwriters at Lloyd's Insurance Co.* v. *Vicksburg Traction Co.*, 106 Miss. 244, 63 So. 455, 51 L.R.A. (N.S.) 319, in which the Mississippi Supreme Court held that the insurer of an automobile, who, in accordance with the provisions of the insurance policy, had become subrogated to the claim of the owner of the automobile for damages thereto against the street railway company, *before* the institution by such owner of an action for personal injuries, growing out of the same alleged wrongful act, in which a judgment for the insurer had been recovered, is not precluded thereby from maintaining an action under the subrogation clause of the policy of insurance. In this case the Court distinguished the case of *Kimball* v. *Louisville & N. R. Co.*, 94 Miss. 396, 48 So. 230, in which the

plaintiff himself had split the cause of action, when he filed an action to recover damages for personal property, and then instituted his action to recover for injuries to his person. In *Farmer* v. *Union Insurance Co.*, 146 Miss. 600, 111 So. 584, a case which involved subrogation under an insurance policy, the Mississippi Supreme Court reached a different result than that reached by that Court in *Underwriters at Lloyd's Insurance Co.* v. *Vicksburg Traction Co., supra.* In the *Farmer* case, the plaintiff Farmer instituted an action against the defendant insurance company to recover on an insurance policy for the destruction of his automobile. To the declaration in that action the defendant insurance company filed a special plea, in which it was alleged that the policy contained a subrogation clause; that Farmer had sustained personal injuries when the automobile was destroyed by collision with a train; that he instituted an action against the railroad company for damages to both his person and to the automobile; that while the action was pending plaintiff amended his declaration so as to eliminate any claim for damages to the automobile; that an agreed judgment was then rendered in plaintiff's favor, and at the same time the railroad company was released from liability for destruction of the automobile, and thus the subrogation clause of the insurance policy was rendered inoperative, and, therefore, the defendant insurance company should be relieved from liability on the policy. The Mississippi Supreme Court held that the trial court committed no error in sustaining defendant's demurrer to the replication to the special plea, and in dismissing the action on the ground that, if plaintiff intended to reserve defendant's right of subrogation, provided for in the policy, the judgment against the Railroad Company should have so recited.

In *Globe & Rutgers Insurance Co.* v. *Cleveland,* 162 Tenn. 83, 34 S. W. 2d 1059, it was held that the plaintiff could not recover for damages to his automobile in an action brought in the plaintiff's name for the use of his insurer under the provision in the insurance policy en-

titling the insurer, after payment of property loss, to a share in any recovery made by the insured for property damages, where another action by the plaintiff for personal injuries sustained in the same action was pending prior to the time when the assignment to the insurer of the property damages was made. In the *Globe & Rutgers Fire Insurance Company* case, the Supreme Court of Tennessee observed that "The pleadings disclose no act or omission on the defendant's part, which can subject him to a second suit on the same right of action, whether brought by the original plaintiff, or by one who has acquired his interest by assignment or by subrogation."

The Supreme Court of Tennessee likewise distinguished the case of *Underwood* v. *Dooley, supra,* on the grounds that: (1) The insurer plaintiff in the first action could not have recovered damages for personal injuries sustained by him; and (2) the statute of North Carolina not only authorized the insurer to sue in his own name to recover of the wrongdoer the sum it had paid to the insured, asserting its right of subrogation, "but deprived the insured of the right to sue for the damage for which he had received compensation from his insurer." The Tennessee Court further observed: "At the time the insurer in the case before us paid the loss under its contract of insurance, and obtained the written assignment from the insured, the latter's action against the defendant was pending in the trial court and his declaration was subject to amendment by the addition of a count seeking damages for the injury to the automobile. If the insurer knew of the pendency of the action, it could have protected its interests under the assignment by tendering such an amendment, in the name of the insured and for its benefit . . . If the insurer was ignorant of the pendency of the owner's suit until after verdict therein, so that its right to intervene was lost, it could not have acquired thereby a right of action, legal or equitable, against the defendant, for the latter did nothing but respond to the owner's suit which the owner had the legal right to prosecute, and could not defend on the ground

that the insurer was not joined." In the *Globe & Rutgers Fire Insurance Company* case, the Supreme Court of Tennessee likewise observed: "The plea would undoubtedly be good against Hunter [the owner of the damaged automobile], if suing in his own right. 'A single tort can be the foundation for but one claim for damages. * * * All damages which can by any possibility result from a single tort form an indivisible cause of action. Every cause of action in tort consists of two parts, to wit, the unlawful act, and all damages that can arise from it. For damages alone no action can be permitted.' " The Supreme Court of Tennessee cited *C. N. O. & T. P. Ry. Co.* v. *Roddy,* 132 Tenn. 568, 574, 179 S. W. 143, 144, L. R. A. 1916E, 974.

In the case of *Vasu* v. *Kohler's, Inc.,* 145 Ohio St. Rep. 321, 61 N. E. 2d 707, 166 A. L. R. 855, the Ohio Supreme Court, the court of last resort in the State of Ohio, reversed a judgment of the Court of Appeals of Mahoning County, Ohio, an intermediate appellate court in the State of Ohio, and remanded the cause to that court with directions. In point 6 of the syllabus of that case, written by the Court, the Ohio Supreme Court held: "Where an injury to person and to property through a single wrongful act causes a prior contract of indemnity and subrogation as to the injury to property, to come into operation for the benefit of the person injured, the indemnitor may prosecute a separate action against the party causing such injury for reimbursement for indemnity monies paid under such contract." According to the American Law Reports annotation at page 871: "* * * the deduction seems fairly warranted that the result of the Vasu Case is based upon two separate and independent grounds, (1) that the plaintiff had two causes of action, one for his property damage and one for his personal injuries, and (2) that, even assuming his cause of action was single and indivisible, it was still proper for the insurance company, as subrogee of a portion of such cause of action, to bring a separate and independent action to enforce its rights against the wrongdoer."

For well considered annotations concerning the rights and remedies incident to subrogation to one but not to both or all of the elements of a single cause of action for injury to person and damages to property, see the annotation to the *Vasu* case, 166 A.L.R. 870, 873, and the annotations to the cases of *Hayward* v. *State Farm Mutual Automobile Insurance Co.*, 212 Minn. 500, 4 N. W. 2d 316, 140 A. L. R. 1236, 1241 to 1249, inclusive; and *Sprague* v. *Adams, et al.*, 139 Wash. 510, 247 P. 960, 47 A. L. R. 529, 536 to 538, inclusive. In the annotation contained in Lawyers' Reports Annotated in 47 A.L.R., 536 to 538, inclusive. The case of *Sprague* v. *Adams, supra,* is criticized in the following language: * * *".

> "The rule is fully established that, in the absence of an agreement to the contrary, one cannot divide a single cause of action and make it the subject of several actions. * * *

> "The conclusion of the court in the SPRAGUE CASE, that the judgment in the action by the insurer, by virtue of its right of subrogation for damage to the car, was a bar to a subsequent action by the insured for damage to his person, rests upon the premise that damage to person and to property in the same action and by the same tort constitutes but a single, indivisible cause of action."

(3) The English or minority rule is to the effect that damages to property, or injury to the same person, although the result of a single wrongful act, give rise to different rights and distinct causes of action, and, therefore, a recovery upon the one cause of action cannot be pleaded in bar of a recovery on the other cause of action. This rule is exemplified in the case of *Brunsden* v. *Humphrey,* Vol. XIV of the Law Reports, Queen's Bench Division (1884) 141, in which the plaintiff brought an action in the county court to recover for damages to his cab occasioned by the negligence of defendant's servant, and, having recovered the amount claimed and having afterwards brought an action in the British High Court of

Justice against the defendant, claiming damages for personal injury sustained by the plaintiff for the same negligence, the Court of Appeals, embraced in the Supreme Court of Judicature, reversed the judgment of the Queen's Bench Division, contained in 11 Q. B. D. 712, and held that the action in the High Court of Justice was maintainable, and was not barred by the previous proceedings in the county court. This minority, or so-called English rule, has been adopted in minority but ever-growing jurisdictions in this country. Recently in *Carter* v. *Hinkle*, 189 Va. 1, 52 S. E. 2d 135 (1949), the Supreme Court of Appeals of Virginia held that the common law rule still prevails in the Commonwealth of Virginia; and that a person injured in both his person and property, through a single negligent act, may join both claims for damages in the same action, but does not have to do so, and such plaintiff, if he so desires, may bring an action of trespass or trespass on the case, or under the Virginia statute, Virginia Code, 1919, Vol. 2, Section 6086, wherever trespass will lie, trespass on the case may be brought. In this case the Supreme Court of Appeals of Virginia held specifically that the plaintiff, who suffered both damages to his property and injury to his person, as the result of a single wrongful act of defendant's agent in causing an automobile collision, may maintain two separate actions therefor, so that judgment for the property destroyed recovered in the first action would not bar action for personal injuries sustained, as the result of the same wrongful act. Two members of the Court, Eggleston, Judge, and Chief Justice Hudgins, dissented. The Supreme Court of Appeals of Virginia, cited in support of the minority view, the following cases: *Vasu* v. *Kohler's, Inc.*, (1945), 145 Ohio St. 321, 61 N. E. 2d 707, 166 A. L. R. 855, and *Reilly* v. *Sicilian Asphalt Paving Co.*, 170 N. Y. 40, 62 N. E. 772, 773, 57 L. R. A. 176, 88 Am. St. Rep. 636. Likewise supporting the minority rule are cases collated in the annotation to American Law Reports in *Underwood* v. *Dooley, supra,* 64 A. L. R. 656, 670, 674, and the annotation to *Dearden* v. *Hey, supra,* 127 A. L. R. 1083 and 1084.

As heretofore stated the exact question now before this Court has never been decided by the Court; and because of the great diversity in the decisions of this country, and the fact that the cases decided by this Court have approached closely to the adoption of the majority rule, we have taken the liberty, even at the risk of making this opinion seem prolix, to set forth somewhat in detail the problem which confronts this Court. We are well aware that the criticism of the case of *Sprague* v. *Adams, supra,* contained in the annotation thereto, is not without merit.

The vice of the majority view, which is to the effect that damages resulting from a single action at law, when suffered by one person, though such damages may be partly for damages to or destruction of property, and partly for personal injuries, are subject to only one action against the tort feasor or tort feasors, is that where there is a prior contract of indemnity and subrogation, such as in the instant case, the indemnitor by bringing an action and recovering damages in the name of the insured, may preclude the insured from thereafter bringing an action to recover for personal injuries growing out of the same wrongdoing, though such injury may be extensive and of such character that, except for the application of the majority rule, it would entitle the injured party to damages greatly in excess of the property damage caused by the same tort. And, contrariwise, an insured under a prior contract of indemnity and subrogation, by bringing an action and recovering damages for personal injuries, may, under the application of the majority rule, preclude the insurer, though the insurer has a formal contract of indemnity and subrogation, from asserting its rights thereunder in a subsequent action. Further, if there are two or more indemnitors, under policies of insurance and subrogation, embracing property damage, and a claim for personal injuries growing out of the same alleged wrong, which has caused the property damage, there may be a race between the several indemnitors and the insured as to which one goes to court first and proceeds to final judgment.

The vice of the minority view and the exception to the majority view, as adopted by the decisions in some jurisdictions, is that it will permit the splitting of what logically is a single cause of action, and a defendant which has committed a tort which has caused both property damage and personal injuries, may be harassed by two or more actions at law, though he has committed a single wrong.

In view of the decisions of this Court which, as heretofore stated, do not involve the exact question now before us, and with full realization of the injustice of subjecting a wrongdoer or wrongdoers to two or more actions at law for a single wrong, this Court reverses the judgment of the Circuit Court of Wyoming County, sets aside the jury verdict, and, under the holding of this Court in point 8 of the syllabus of *Koblegard Company* v. *Maxwell*, 127 W. Va. 630, 34 S. E. 2d 116, grants the defendants a new trial.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*